**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

FILED _____ ENTERED
LOGGED _____ RECEIVED

JAN 2 3 2023

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | Crim No. 8:12-cr-00086-DKC-2 |
| **SAMUEL BRAXTON,** | * | |
| **Defendant.** | * | |

\*\*\*\*\*\*

**MOTION FOR COMPASSIONATE RELEASE PURSUANT TO**
**18 U.S.C. § 3582(C)(1)(A) AND FIRST STEP ACT OF 2018**

COMES Movant, SAMUEL BRAXTON ("Braxton"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by

the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. STATEMENT OF THE CASE

### A. Procedural Background

On February 23, 2012, a grand jury sitting in the United States District Court for the District of Maryland, Greenbelt Division, returned a one (1) count Indictment charging Braxton and 10 other co-defendants. See Doc. 10.[1] Count 1 charged Braxton with Conspiracy to Possess with Intent to Distribute: One Kilogram or More of A Mixture and Substance Containing a Detectable Amount of Phencyclidine; 28 Grams or More of Cocaine Base (Crack); and A Mixture and Substance Containing a Detectable Amount of Heroin, in violation of 21 U.S.C. §§ 841 and 846. *Id.* The Indictment also contained Forfeiture Allegation pursuant to 21 U.S.C. § 853. *Id.*

On September 24, 2012, an Arraignment was held and Braxton entered a guilty plea as to Count 1 of the Indictment, pursuant to a written Plea Agreement. See Docs. 210, 211.

---

[1]
"Doc." refers to the Docket Report in the United States District Court for the District of Maryland, Greenbelt Division in Criminal No. 8:12-cr-00086-DKC-2, which is immediately followed by the Docket Entry Number.

2

On April 1, 2013, Braxton was sentenced to a term of 324 months' imprisonment, 5 years Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $1s00. See Doc. 304, 305.

On April 9, 2013, Braxton timely filed a Notice of Appeal which was dismissed on July 2, 2014. See Docs. 311, 400, 401.

On November 24, 2014, Braxton filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), which was denied by the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") on August 11, 2015. See Docs. 425, 444.

On August 12, 2015, Braxton filed a Notice of Appeal re: Denial of his § 2255 Motion which the Fourth Circuit denied a certificate of appealability and dismissed his appeal. See Docs. 445, 448.

On April 27, 2017, Braxton filed a Motion to Reduce Sentence - USSC Amendment 782. See Doc. 486.

On May 16, 2017, the Court issued an Order reducing Braxton's sentence pursuant to Amendment 782, his sentence was reduced to a new term of imprisonment of 291 months. See Docs. 492, 493.

On May 26, 2020, Braxton filed a Motion for Compassionate Release which was denied on December 7, 2020. See Docs. 552, 572, 580.

3

## B.    Statement of the Facts

### 1.    Offense Conduct

Between June 2010 and February 2012, Mr. Braxton was part of a drug trafficking conspiracy, along with ten co-conspirators, during which Braxton regularly received multi-ounce to gallon quantities of a mixture or substance containing a detectable amount of PCP. Braxton would then add starter fluid or other chemicals to the PCP to increase its quantity. Also, during this time period, Braxton received multi-ounce quantities of heroin. Braxton also received cocaine hydrochloride and crack from various sources of supply and would convert a portion of the cocaine hydrochloride into crack. Braxton then sold that PCP, heroin, and crack to regular drug customers in Prince George's County, Maryland, and elsewhere in the Washington, D.C. metropolitan area.

From November 2011 through January 2012, the United States District Court for the District of Maryland authorized wire interceptions on Braxton's cellular telephone. During that time, Braxton was intercepted on over 600 drug-related telephone conversations during which he and other co-conspirators discussed the sale of and arranged drug transactions involving PCP, heroin, crack, cocaine, and marijuana.

On December 22, 2011, Braxton was overheard on wire interception directing his minor son to transport a bag containing PCP from Braxton's bowling alley locker. Specifically, Braxton said, "Just put it in my locker, 109, don't let nobody see you do it, hold up, don't let nobody see you put it in there ok...Go check my locker cause the last time I had you at my locker, I went right there and opened it up because you didn't push the key." That same day, agents observed Braxton's minor son exiting Braxton's vehicle, entering AMF Marlow Heights Lanes bowling alley, exiting a short time later, and re-entering Braxton's vehicle. On another occasion during the time of the conspiracy, a witness observed Braxton, at the AMF Marlow Heights bowling alley, place bottles of PCP in his minor son's lunch box and direct his son to bring the lunch box to Braxton's apartment.

4

On February 23, 2012, law enforcement seized approximately 16 ounces of PCP that were owned by Braxton during the execution of a search warrant and also seized approximately eight ounces of PCP from Braxton's bowling alley locker (number 109) located at AMF Marlow Heights Lanes in Temple Hills, Maryland.

See Doc. 621 at 1-3.

### 2.   Plea Proceeding

On September 24, 2012, an Arraignment Hearing was held before Judge Roger W. Titus. See Doc. 210. Braxton entered a guilty plea as to Count 1 of the Indictment. *Id.* In exchange of Braxton's guilty plea, (a) under U.S.S.G. § 2D1.1(a)(5) and 2D1.1(c)(3), the base offense level is 34, because Braxton was responsible for at least three kilograms of phencyclidine, 28 grams of cocaine base, and 100 grams of heroin (collectively, the equivalent of 3,199 kilograms of marijuana under the U.S.S.G. Drug Equivalency Tables) and (b) he would receive a 3-level reduction for the acceptance of responsibility. *Id.* In exchange for Braxton's guilty plea, the government agreed not to file a notice of Mr. Braxton's two prior drug convictions pursuant to 21 U.S.C. § 851, which would have mandated a life sentence. See Doc. 211.

### 3.   Sentencing Proceeding

On April 1, 2013, a Sentencing Hearing was held before Judge Roger W. Titus. See Doc. 304. Braxton was sentenced to term of 324 months' imprisonment. *Id.* Upon

5

release from imprisonment, Braxton shall be on a 5 years' supervised release. *Id.* The Court also ordered payment of a Mandatory Special Assessment Fee of $100. *Id.* A timely Notice of Appeal was filed on May 9, 2013. See Doc. 311.

On April 27, 2017, Braxton filed a Motion to Reduce Sentence - USSC Amendment 782 which the Court granted a sentence reduction to a new term of 291 months' imprisonment on May 16, 2017. See Docs. 486, 492, 493.

5.   Appellate Proceeding

On consolidated appeals, Braxton and Kevin Brown seek to appeal the sentences imposed following their guilty pleas to drug conspiracy charges. See Doc. 400. The Government has moved to dismiss the appeals based on the appellate waiver provisions in Braxton's and Brown's respective plea agreements. *Id.* Upon review of submissions relative to the motion to dismiss, the Fourth Circuit granted the motion and dismissed the appeals. *United States v. Braxton*, No. 15-7637 (4th Cir. Jan. 20, 2016).

6.   Postconviction Proceeding

On November 24, 2014, Braxton filed a motion to vacate pursuant to 28 U.S.C. § 2255. See Doc. 425. In that motion, Braxton raised the following claims: First, Braxton claims his counsel was ineffective for failing to object to his designation as a Career Offender. Second, Braxton challenges his designation as a Career Offender

6

outright. The government filed a response. See Doc. 438. On January 20, 2016, in accordance with the decision of the Fourth Circuit, a certificate of appealability was denied and the appeal was dismissed. See Doc. 448.

## III. DISCUSSION

As a preliminary matter, Braxton respectfully requests that this Court be mindful that courts have a duty to construe *pro se* motions liberally. See *Jackson v. Lightsey*, 775 F.3d 170 (4th Cir. 2014); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### A.    Federal Courts Have the Jurisdiction and Power to Reduce An Existing Sentence

This Court has the power to adjust Braxton's sentence. District courts no longer need a motion from the Bureau of Prisons to resentence a federal prisoner under the compassionate release provisions of 18 U.S.C. §3582(c)(1)(A)(i). A district court may now resentence if the inmate files a motion after exhausting administrative remedies. The reasons that can justify resentencing are not limited to medical, age, or family circumstances. A district court may resentence if the inmate demonstrates extraordinary and compelling reasons for a sentence reduction. Such reasons are present in this case.

7

1.   <u>Historical Framework</u>

Congress first enacted the compassionate release provisions in 18 U.S.C. §3582

as part of the Comprehensive Crime Control Act of 1984. That legislation provided

that a district court could modify a final term of imprisonment when extraordinary

and compelling reasons warrant such a reduction. 18 U.S.C. §3582(c)(1)(A)(i). In

1984, this provision was conditioned on the Bureau of Prisons (BOP) filing a motion

in the sentencing court. Absent a motion by the BOP, a sentencing court had no

jurisdiction to modify an inmate's sentence. Congress did not define what constitutes

an "extraordinary and compelling reason," but the legislative history recognized that

the statute was intended, in part, to abolish and replace federal parole. Rather than

have the parole board review for rehabilitation only, Congress authorized review for

changed circumstances:

> The Committee believes that there may be unusual cases in which an
> eventual reduction in the length of a term of imprisonment is justified by
> changed circumstances. These would include cases of severe illness,
> cases in which other extraordinary and compelling circumstances justify
> a reduction of an unusually long sentence, and some cases in which the
> sentencing guidelines for the offense of which the defender was
> convicted have been later amended to provide a shorter term on
> imprisonment. S. Rep. No. 98-225 at 55-56 (1983).

18 U.S.C. § 3582 acts as a "safety valve" for the "modification of sentences"

that would previously have been addressed through the former parole system. *Id*. at

121. The provision was intended "to assure the availability of specific review and reduction of a term of imprisonment for "extraordinary and compelling reasons" and [would allow courts] to respond to changes in the guidelines." *Id*. Thus, sentencing courts have the power to modify sentences for extraordinary and compelling reasons.

2.   Section 3582(c)(1)(A) is Not Limited To Medical, Elderly or Childcare Circumstances

Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the United States Sentencing Commission. 28 U.S.C. § 994(t) ("The Commission...shall describe what should be considered "extraordinary and compelling reasons" for sentence reduction, including the criteria to be applied and a list of specific examples." Congress provided one limitation to that authority: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Rehabilitation could, however, be considered with other reasons to justify a reduction.

In 2007, the Sentencing Commission defined "extraordinary and compelling reasons" as follows:

(A)   Extraordinary and Compelling Reasons - Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the following circumstances:

(i)   The defendant is suffering from a terminal illness.

9

(ii)    The defendant is suffering from a permanent physical or medical condition, or is experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self care within the environment of a correctional facility and for which conventional treatment promises no substantial improvement.

(iii)   The death or incapacitation of the defendant's only family member capable of caring for the defendant's minor child or minor children.

(iv)   As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason for purposes of subdivision (1)(A). USSG §1B1.13, Application Note 1.

As we will see, with the passage of The First Step Act, subparagraph (iv) is no longer limited by what the BOP decides is extraordinary and compelling.

Historically, the BOP rarely filed motions under § 3582(c)(1)(A), even when the inmates met the objective criteria for modification. See U.S. Dep't of Justice Office of the Inspector General, The Federal Bureau of Prisons Compassionate Release Program (Apr. 2013). The Office of the Inspector General also found that the BOP failed to provide adequate guidance to staff on the criteria for compassionate release, failed to set time lines for review of compassionate release requests, failed to create formal procedures for informing prisoners about compassionate release, and failed to generate a system for tracking compassionate release requests. *Id*. at i-iv. Congress heard those complaints and in late 2018 enacted The First Step Act.

3.   The First Step Act

The First Step Act, P.L. 115-391, 132 Stat. 5194, at (Dec. 21, 2018), among

other things, transformed the process for compassionate release. *Id*. at § 603. Now,

instead of depending upon the BOP to determine an inmate's eligibility for

extraordinary and compelling reasons and the filing of a motion by the BOP, a court

can resentence "upon motion of the defendant." A defendant can file an appropriate

motion if the he or she has exhausted all administrative remedies or "the lapse of 30

days from the receipt of such a request by the warden of the defendant's facility,

whichever is earlier." 18 U.S.C. §3582(c)(1)(A). The purpose and effect of this

provision is to give federal courts the ability to hear and resentence a defendant even

in the absence of a BOP motion. Congress labeled this change "Increasing the Use

and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358

(2018). Senator Cardin noted in the record that the bill "expands compassionate

release under the Second Chance Act and expedites compassionate release

applications." 164 Cong. R. 199 at S7774 (Dec. 18, 2018). In the House,

Representative Nadler noted that the First Step Act includes "a number of very

positive changes, such as … improving application of compassionate release, and

providing other measures to improve the welfare of federal inmates." 164 Cong. R.

H10346-04 (Dec. 20, 2018).

Once an inmate has pursued administrative remedies through the BOP, upon his or her motion, the sentencing court has jurisdiction and the authority to reduce a sentence if it finds "extraordinary and compelling reasons" to warrant a reduction. Judicial authority is no longer limited to cases that have the approval of the BOP.

> 4.   Braxton Has Exhausted Administrative Remedies

A motion by an inmate can be filed in the district court after (1) the inmate has made the request to the Warden, and (2) either the request was denied or 30 days have lapsed from the receipt of the request, whichever is sooner. First Step Act of 2018, section 803(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

Braxton has filed a request for compassionate release to the Warden at FCI Fort Dix, but he has not received a response yet.  Because 30 days have lapsed from the receipt of the request and the BOP failed to file a motion on Braxton's behalf, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

**B.   The Changes in Relevant Law, along with Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct, Are Extraordinary and Compelling Circumstances That Warrant Release.**

Section 3582(c) states that a district court cannot modify a term of imprisonment once it has been imposed except that, in any case:

12

The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A).

In this case, there are at least five extraordinary and compelling reasons warranting such a reduction, discussed as follows:

1. <u>Braxton Is Eligible for a Reduced Sentence Under Section 404 of the First Step Act</u>

Section 404 of the First Step Act permits courts to impose reduced sentences on any prisoner still serving a sentence for a crack-cocaine offense if that sentence was imposed when the pre-FSA penalty structure still applied. The Act establishes its remedy in two steps, and it clearly applies to Braxton at each step.

First, the Act defines what offenses are covered by its remedy:

Definition of Covered Offense: In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 11 1220; 124 Stat. 2372), that was committed before August 3, 2010.

See First Step Act, Title IV, Sec. 404(a); see also Fair Sentencing Act. Braxton's drug offenses are "covered offenses" because Section 2 of the FSA "modified" the "statutory penalties" under § 841(b) for "violation[s]" of 21 U.S.C. §§ 841(a) and 846 that involved crack cocaine. Braxton' offense involved crack cocaine, and committed the violation before August 3, 2010.

Second, the Act provides the circumstances under which a district court can reduce the sentence for defendants who were previously sentenced for a "covered offense":

> Defendants Previously Sentenced: A court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 11 1-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

*Id.*, Section 404(b). This provision plainly applies to Braxton because this Court previously "imposed a sentence" on him "for a covered offense." Through this motion, he now moves for a reduced sentence under Section 404(b) of the First Step Act and in accordance with the FSA's reduced statutory penalties.

Third, the Act provides narrow limitations on this sentencing reduction power. The Act delineates that a court shall not entertain a motion made under Section 404 of the First Step Act to reduce a sentence "if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of

14

the Fair Sentencing Act of 2010." *Id.*, Sec. 404(b). Neither of these limitations apply

to Braxton, and he is currently serving a sentence of 324 months under the pre-FSA

statutory penalty structure for a crack cocaine offense.

In summation, proving eligibility under the First Step Act is straightforward.

A defendant is eligible if he was convicted of a crack cocaine offense, was sentenced

when the pre-FSA statutory penalties were still in effect, and continues to serve a

sentence that has not already been reduced to the post-FSA statutory penalties.

Because Braxton satisfies all of these requirements, the Court has the authority to

impose a reduced sentence for his crack cocaine conviction.

2.  Erroneous Career Offender Enhancement

In this case, the District Court erred in determining that Braxton was a career

offender within the meaning of U.S.S.G. § 4B1.1(a), which provides:

> A defendant is a career offender if (1) the defendant was at least
> eighteen years old at the time the defendant committed the instant
> offense of conviction; (2) the instant offense of conviction is a felony
> that is either a crime of violence or a controlled substance offense; and
> (3) the defendant has at least two prior felony convictions of either a
> crime of violence or a controlled substance offense.

Braxton was over 18 years of age when he committed this offense, and it was

a "controlled substance" offense within the meaning of U.S.S.G. § 4B1.1(a). His

sentence was therefore subject to being enhanced under the "Career Offender"

Guidelines provision, § 4B1.1, if he had "at least two prior felony convictions of either a controlled substance offense or a crime of violence. "The PSR construed U.S.S.G. § 4B1.2, which defines a "controlled substance offense" and a "crime of violence."

Braxton was sentenced as a career offender because before he was convicted in federal court of the present offense, Braxton had at least three prior felony convictions of either a crime of violence or a controlled substance offense, enumerated as follows:

1)   May 22, 1997, Arlington County, VA: Distribution of at least 5 Grams of Cocaine to Another Person. He was sentenced to 8 years' imprisonment; and

2)   June 29, 2008, District of Columbia. Attempted Distribution of Cocaine. Braxton was sentenced to 30 months' imprisonment.

Here, Braxton contests that he had at least two felony convictions of either a crime of violence or a controlled substance offense, explained as follows:

*Attempting to Distribute Drugs Is Not A Controlled Substance Offense Under Career Offender Guideline*

In *United States v. Havis*, 927 F.3d 382 (6th Cir. June 19, 2019), the Sixth Circuit held that the U.S. Sentencing Guidelines' definition of "controlled substances offenses" does not include attempt crimes because the Sentencing Commission overstepped its authority when it expanded the applicability of U.S.S.G. § 4B1.2

16

without subjecting the rule to congressional review or notice or comment. *Id.* at 386-87.

In this case, Braxton's sentence enhancement is no longer valid due to a change of law– the existence of a new retroactive rule of law in *United States v. Havis*, 927 F.3d 382 (6th Cir. June 19, 2019). Due to this retroactive change of the law, his sentence now presents an error sufficiently grave to be deemed as a fundamental defect.

Braxton's motion is premised on the Sixth Circuit's decision in *Havis*. In *Havis*, the defendant was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *Havis*, 927 F.3d at 383. The district court increased his base offense level, finding that a prior Tennessee conviction for "selling and/or delivering cocaine" was a "controlled substance offense." *Id.* at 383-84. The parties agreed that the least culpable conduct under the Tennessee statute was the "attempted delivery of a controlled substance." *Id.* at 385. The defendant argued that the Tennessee conviction was not a "controlled substance offense" because it "encompassed the mere attempt to sell cocaine."

*Havis*, 927 F.3d at 386. Abrogating *United States v. Evans*, the Sixth Circuit held that the Guidelines plainly exclude attempt crimes and that the commentary to the contrary "deserves no deference." *Havis*, 927 F.3d at 387.

In *Havis*, the Government urges us to find that the commentary at issue here—Application Note 1 to § 4B1.2, which adds attempt crimes to the list of controlled substance offenses under § 4B1.2(b)—is not a "plainly erroneous" interpretation of the corresponding guideline. But the Government sidesteps a threshold question: is this really an "interpretation" at all? The guideline expressly names the crimes that qualify as controlled substance offenses under § 2K2.1(a)(4); none are attempt crimes. And the Commission knows how to include attempt crimes when it wants to—in subsection (a) of the same guideline, for example, the Commission defines "crime of violence" as including offenses that have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a) (emphasis added).

To make attempt crimes a part of § 4B1.2(b), the Commission did not interpret a term in the guideline itself—no term in § 4B1.2(b) would bear that construction. Rather, the Commission used Application Note 1 to add an offense not listed in the guideline. But application notes are to be "interpretations of, not additions to, the Guidelines themselves." *Rollins*, 836 F.3d at 742. If that were not so, the institutional

18

constraints that make the Guidelines constitutional in the first place—congressional review and notice [927 F.3d 387] and comment—would lose their meaning. See *Winstead*, 890 F.3d at 1092 ("If the Commission wishes to expand the definition of 'controlled substance offenses' to include attempts, it may seek to amend the language of the guidelines by submitting the change for congressional review."). The Commission's use of commentary to add attempt crimes to the definition of "controlled substance offense" deserves no deference. The text of § 4B1.2(b) controls, and it makes clear that attempt crimes do not qualify as controlled substance offenses.

See also, *United States v. Palos*, No. 19-4186 (6th Cir. 2020). In *Palos*, Police searched Palos' residence on suspicion of drug trafficking and found narcotics, drug paraphernalia, and a firearm. Palos admitted that he had purchased the firearm "off the streets." It was later confirmed to be stolen. Palos, previously convicted of two separate drug trafficking offenses in state court, pleaded guilty as a felon in possession of a firearm, 18 U.S.C. 922(g)(1). With a Guidelines range of 87-108 months, he was sentenced to 63 months' imprisonment. The Sixth Circuit vacated his sentence, in part. Palos' 2010 conviction under Ohio Revised Code 2925.03(A)(1), which criminalizes "knowingly . . . "sell[ing] or offer[ing] to sell a controlled substance" no longer qualifies as a "controlled substance offense" so that his

19

Guidelines base offense level was miscalculated. Statutes that criminalize offers to sell controlled substances are too broad to categorically qualify as predicate 'controlled substance offenses.'" The court upheld a sentencing enhancement for possession of a stolen firearm, rejecting an argument that Palos had no knowledge that the firearm was stolen. The court noted the absence of a scienter requirement in U.S.S.G. 2K2.1(b)(4). Palos's firearm was stolen at the time Palos unlawfully possessed it and section 2K2.1(b)(4) is a strict liability enhancement.

See *United States v. Michael Powell*, No. 18-3654 (6th Cir. 2019). In *Powell*, Michael Powell pleaded guilty to his role within a large drug conspiracy. On appeal, Powell challenges the sufficiency of his guilty plea and his sentencing enhancement as a career criminal. Regarding the latter, we held Powell's appeal in abeyance when our Court granted en banc review in *United States v. Jeffery Havis*, No. 17-5772, which cast doubt on Powell's qualifying drug offense and the government's reliance on *United States v. Evans*, 699 F.3d 858, 868 (6th Cir. 2012). We have now decided *Havis*—explaining that "[t]he Guidelines' definition of 'controlled substance offense' does not include attempt crimes"—abrogating Evans. *United States v. Havis*, 927 F.3d 382, 387 (6th Cir. 2019) (en banc) (per curiam). As a result, we affirm the district court's decision regarding Powell's guilty plea, but in light of *Havis*, we reverse the district court's decision on Powell's sentence.

In addition, see *United States v. Angel Cordero*, No. 19-3540 (6th Cir. 2020), Defendants Angel Cordero and Eduardo Velasquez were convicted by a jury of conspiring to commit murder for hire and conspiring to distribute one kilogram of cocaine. On appeal, defendants argue that their convictions were not supported by sufficient evidence and challenge the admission of other-acts evidence under Federal Rule of Evidence 404(b). Defendants also raise sentencing claims. Defendants' challenges to their convictions fail because the record demonstrates a sufficient factual basis for their guilt on the charged offenses. Also, the district court correctly admitted the challenged bad-act evidence, as that evidence served permissible purposes under Rule 404(b) and was probative of contested issues in the case. Finally, the district court properly applied the Sentencing Guidelines to calculate Cordero's base offense level. However, as the Government concedes, a limited remand is required with respect to Velasquez, who was incorrectly sentenced as a career offender.

On March 23, 2006, the Sixth Circuit decided *United States v. Montanez*, 442 F.3d 485 (6th Cir. 2006), holding that convictions under former Ohio Revised Code §§ 2925.03(6) and (9) do not qualify as controlled substance offenses for the purposes

21

of career offender sentencing enhancement under U.S.S.G. § 4B1.1.[2] *Montanez*, 442

F.3d at 494 . In *Montanez*, the Sixth Circuit used the categorical approach and looked

at the statutory language for the convictions at issue. *Id*. at 491. Ohio Revised Code

§ 2925.03(A)(6) read: "No person shall knowingly . . . [p]ossess a controlled

substance in an amount equal to or exceeding three times the bulk amount, but in an

amount less than one hundred times that amount." O.R.C. § 2925.03(A)(6), qtd. in

*Montanez*, 442 F.3d at 491. Sixth Circuit noted that "simple possession – that is,

possession without the proof beyond a reasonable doubt of the requisite intent to

'manufacture, import, export, distribute, or dispense' – is not a controlled substance

offense" for the purposes of sentencing. *Montanez*, 442 F.3d at 488 Because the

statutory language of O.R.C. §§ 2925.03(A)(4), (6), and (9) criminalized only

possession in a bulk amount, convictions under those provisions could not be

qualifying convictions for sentencing enhancement purposes.

In reaching its conclusion in *Montanez*, the Sixth Circuit sought to address

"past conflicting unpublished dispositions" by the Circuit and "the errors contained

in those decisions." *Id*. at 491. The Sixth Circuit expressly acknowledged that two

such cases were "wrongly decided" – *Gibbs v. United States*, 3 F.App'x 404 (6th Cir.

---

[2]

This holding includes O.R.C. § 2925.03(A)(4) by extension, as it only varies from (A)(6) and
(A)(9) by involving lesser amounts. *Montanez*, 442 F.3d at 493, n.5

2001), and *United States v. Coteat*, 133 F.App'x 177 (6th Cir. 2005). *Montanez*, 442 F.3d. at 491. Rather than follow those cases, the Circuit decided to follow its conflicting decision in *United States v. Wright*, 43 F.App'x 848 (6th Cir. 2002), and a similar decision by the Ninth Circuit in *United States v. Foster*, 28 F.3d 109, 1994 WL 201201 (9th Cir. 1994) (interpreting O.R.C. § 2925.03(A)(4)). The Sixth Circuit's use of the categorical approach to determine whether a prior conviction qualified as a predicate offense for the purposes of sentencing enhancement was not new with *Montanez*; such had long been the law. *Taylor v. United States*, 495 U.S. 575, 601-02 (1990); *States v. Dolt*, 27 F.3d 235, 238 (6th Cir. 1994); *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995); *United States v. Butler*, 207 F.3d 839, 843 (6th Cir. 2000); Gibbs v. United States, 3 F.App'x 404, 405 (6th Cir. 2001); *United States v. Wright*, 43 F.App'x 848, 851 (6th Cir. 2002); *United States v. Coteat*, 133 F.App'x177, 178 (6th Cir. 2005). In applying the categorical approach, courts look only to "the fact of conviction and the statutory definition of the predicate offense." *Arnold*, 58 F.3d at 1121 (citing *Taylor*, 495 U.S. at 602). Accordingly, "it is not only impermissible, but pointless, for the court to look through to the defendant's actual criminal conduct." *Wright*, 43 F.App'x at 851 (quoting *United States v. John*, 936 F.2d 764, 767 (3rd Cir. 1991)). Given that the categorical approach had already been adopted at the time of the Defendant's sentencing, the critical question for the

Defendant's counsel was how the categorical approach interpreted the particular statute under which Braxton was charged, O.R.C. § 2925.03(A)(4). At the time of Frost's sentencing, there were three Sixth Circuit opinions, all unpublished, directly on point. See *Gibbs*, *Wright*, *Coteat*. Because all three cases were unpublished, none had binding precedential value. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 n.4 (6th Cir. 2007).

The Sentencing Guidelines provide for an increased sentence if the defendant qualifies as a career offender. Two key components for a defendant to qualify as a career offender include whether: (1) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (2) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. USSG § 4B1.1. The career offender guideline defines a controlled substance offense, in relevant part, as an offense under federal or state law that prohibits the manufacture, import, export, export, distribution, or dispensing of a controlled substance or the possession of a controlled substance with intent to manufacture, import, export, distribute, or dispense. USSG §4B1.2(b). The application note to § 4B1.2 provides that a controlled substance offense includes offenses of aiding and abetting, conspiring, and attempting to commit such offense. USSG §4B1.2(b), comment. (n.1).

On May 25, 2018, in *United States v. Winstead*, No. 12-3036 (D.C. Circuit 2018), the D.C. Circuit addressed the inconsistency between the guideline itself and the application note. Although the application note provides that an inchoate offense, including an attempt, qualifies as controlled substance offenses, the court held that the Sentencing Commission exceeded its authority when it attempted to expand the definition of controlled substance offense to include an inchoate offense such as an attempt. The court indicated that if the Sentencing Commission wanted to expand the definition of controlled substance offense to include attempt, it could seek to amend the language in the guideline by submitting the change for congressional review.

In reaching its decision, the D.C. Circuit acknowledged that the First, Sixth, Eighth, Tenth, and Eleventh Circuits had opinions that were in conflict with its holding. The court stated that the decisions from these other circuits ran afoul of the plain text of the guideline.

The same reasoning should apply to Braxton's case, in light of *Havis* and *Winstead,* attempted distribution of cocaine as a "controlled substance offense" for career offender purposes. Because attempted distribution of cocaine is not a "controlled substance offense", the factual basis of the conviction admits to conduct that legally does not satisfy every element of the charged statute. A guilty conviction to a non-existent offense obviously affected both Braxton's substantial rights, as well

25

as the fairness, integrity, or public reputation of the proceedings.

*Havis* and *Winstead* are substantially relevant in regard to Braxton's arguments, making clear indication that the interpretation of statutes by district courts are contrary to the Congress' intent. Further, the statutes are too ambiguous to secure a conviction. Since, Braxton's attempted to distribute a controlled substance should not be considered as a "controlled substance offense" pursuant to USSG §4B1.2(a). The same applies to Braxton's circumstance.

Accordingly, Braxton should be resentenced without the career offender enhancement.

2.    18 U.S.C. § 3582(c)(2) and USSG Amendment 782

In April of 2014, the U.S. Sentencing Commission voted to lower the federal drug sentencing guidelines by two (2) levels and sent U.S.S.G. Amendment 782 to Congress which became effective on November 1, 2014. The Commission then considered whether to make this relief retroactive to current prisoners who have already been sentenced. On July 18, 2014, the Commission voted for full retroactivity of U.S.S.G. Amendment 782.

"In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guidelines provisions that were applied when the defendant was sentenced, and shall leave all other guideline application decisions unaffected." USSG § 1B1.10(b)(1).

After the district court determines what the modified sentence would be, the district court is required to consider any applicable factors under 18 U.S.C. § 3553 in deciding whether a sentence modification is "warranted in whole or in part under the particular circumstances of the case." *Dillon*, 130 S.Ct. at 2692. "Because reference to § 3553 is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into preliminary re-sentencing proceedings." *Id.* Thus, even if Braxton qualifies for sentence modification under the first step of the analysis, the decision whether to ultimately grant a modification is left to the sound discretion of the trial court. See *Dillon*, 130 S.Ct. at 2692.

Therefore, Braxton is eligible to receive a 2-level reduction pursuant to Amendment 782 of the U.S. Sentencing Guidelines.

### 3. Drug Weight Calculation

Here, Braxton urges the Court to assess *United States v. Stanback*, 377 F. Supp. 3d 618 (W.D. Va. 2019). In *Stanback*, Kelly George Stanback, represented by counsel, filed a motion to reduce his sentence pursuant to Section 404(b) of the First Step Act of 2018. ECF No. 1449. He asks the court to reduce his current sentence of 248 months to time served. The government asserts that Stanback is ineligible for consideration of a reduction in his sentence, and in the alternative, that if he is

27

eligible for consideration, a further reduction of his sentence is not warranted. The government suggests that the only relief to which Stanback is entitled is a reduction in his term of supervised release from 5 years to 4 years. For the reasons set forth below, the court granted Stanback's request and modified his sentence to time served, to be followed by a 4-year term of supervised release.

The drug weight is an element of the offense and that any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Under those two cases, if Stanback were sentenced today, his sentence would be based on distributing 5 grams or more of cocaine base, and not 3,000 kg to 10,000 kg of Marijuana equivalent.

In *Apprendi*, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. In *Alleyne*, the Court applied *Apprendi* to the federal mandatory minimum and maximum sentencing scheme and held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an element of the crime

28

that must be submitted to the jury. *Id*. at 116, 133 S.Ct. 2151 (overruling *Harris v.*

*United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) ).

Neither *Apprendi* nor *Alleyne* are retroactively applicable on collateral review.

See *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001) (joining other circuits

in finding that *Apprendi* does not apply retroactively to cases on collateral review);

and *United States v. Stewart*, 540 Fed.Appx. 171 (4th Cir. 2013) (*per curiam*) (noting

that *Alleyne* has not been made retroactively applicable to cases on collateral review).

However, for a period of time after *Apprendi* was decided, including before passage

of the Fair Sentencing Act in 2010, the jury ordinarily made a finding regarding the

threshold penalty, but the court could and did impose statutory-minimum penalties

regardless of any jury finding. That practice was authorized by *Harris*, and *Alleyne*

did not overrule *Harris* until three years later, and three years after the Fair

Sentencing Act was enacted. Nonetheless, Congress, when drafting the First Step Act

in 2018, surely did not intend for courts to disregard the last six years of Supreme

Court federal sentencing jurisprudence and this court declines to do so.

*Alleyne* made clear that in order to preserve a defendant's Sixth Amendment

right to a jury trial, any fact that increases the statutory mandatory minimum sentence

is an element of the crime which must be submitted to the jury. *Alleyne*, 570 U.S. at

116, 133 S.Ct. 2151. In this case, Braxton pled guilty to (a) One Kilogram or More

29

of A Mixture and Substance Containing a Detectable Amount of Phencyclidine, (b) 28 Grams or More of Cocaine Base (Crack), and (c) A Mixture and Substance Containing a Detectable Amount of Heroin. Under *Alleyne*, this court is not free to ignore that finding and impose a penalty based on the 500 grams of cocaine base referenced in the PSR. Thus, although *Apprendi* and *Alleyne* are not retroactively applicable on collateral review, this court joins other courts in finding that their holdings are applicable in the context of the First Step Act. See *United States v. Simons*, No. 07-CR-00874, 375 F.Supp.3d 379, 487, 2019 WL 1760840 at \*6 (E.D.N.Y. Apr. 22, 2019) (citing *Alleyne* and finding that statutory penalties are determined by facts submitted to a grand jury, trial jury, or established by a guilty plea while findings by a judge may be used to determine a sentence within the statutory penalties and cannot change "the mandatory minimum sentence now applicable"); *United States v. Dodd*, No. 3:03-CR-18-3, 372 F.Supp.3d 795, 2019 WL 1529516 (S.D. Iowa, Apr. 9, 2019) (finding in a First Step Act case that "[b]oth *Apprendi* and *Alleyne* are binding on this Court for sentencings held today."); *United States v. Davis*, No. 07-CR-245(S)(1), 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019), appeal docketed, No. 19-874 (2nd Cir. Apr. 5, 2019) ("[I]t is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."); see also *United States v. Laguerre*, No. 5:02-CR-30098-3, 2019 WL 861417 (W.D. Va. Feb. 22,

2019) (relying without discussion on charged drug weight rather than PSR weight to find defendant eligible for relief).

5.   Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct

With respect to the need to avoid unwarranted sentencing disparities, Braxton urges the Court to consider the sentences of recent compassionate release grants:

i.   *United States v. Hearron, 2020 WL 4569556, at \*1 (D. Ariz. Aug. 7, 2020)*

- FCI-Terre Haute
- 1992 sentenced to 5 life terms, career offender, marijuana and cocaine and 924(c)
- 82 years old, heart failure, atrial fibrillation, renal insufficiency, gout, hypertension, has pacemaker
- Care Level 3
- Hearron is 82 years old, i.e., at least 65 years old. He is experiencing a serious deterioration in physical or mental health because of the aging process and has served approximately 30 years of his life sentence
- Although Hearron was classified as a career criminal and was in a criminal history category IV when sentenced, the Court recognizes that currently drug trafficking defendants are often sentenced to lower terms of incarceration than when Hearron was sentenced.

ii.   *United States v. Garcia, 2:95-cr-00142-JPS, Dkt. 196 (E.D. Wisc., March 27, 2020)*

- 296 months of 360-month sentence, career offender due to 1971 conviction
- Over 65 years old, served at least 10 years, serious medical

31

conditions

iii.   *United States v. Cordova, 4:19-cr-40025-TSH, (DE 133) (D. Mass. May 1, 2020)*
   - Granting pretrial release to a 36 year old defendant, (see DE 120: 2), who was alleged to be a career offender facing a ten year mandatory minimum sentence

iv.   *United States v. Perry, 2020 WL 7024915, at \*1 (E.D. Mich. Nov. 30, 2020)*

   - 188-month sentence for drugs, has 3 years left
   - Traumatic life
   - 45 years old, overweight, drug use
   - FCI Tallahassee
   - Also cite her career offender designation
   - Under case law no longer a career offender
   - "Disparity created by the career offender designation constitutes an additional independent extraordinary and compelling reason for relief"

vi.   *United States v. Jackson, 2020 WL 4284312, at \*2 (D. Kan. July 27, 2020)*
   - Reducing life sentence to time served
   - In that regard, the Government agrees that the Court should consider that sentencing disparity, and it concedes that defendant today would be subject only to a ten-year minimum for her drug offense and that her low-end guideline sentence would be 211 months
   - At Waseca

The Third Circuit, *en banc*, holds inchoate offenses are not "controlled substance offenses." (520) At defendant's sentencing for drug trafficking, the district court found defendant was a career offender based in part on its finding that his prior conviction under Virginia law for attempting to possess with intent to distribute

32

cocaine was a "controlled substance offense" under § 4B1.2. The Third Circuit, en banc, held that even though the guidelines commentary includes inchoate offenses such as attempt, the court would not defer to the commentary. The prior decision in *U.S. v. Hightower*, 25 F.3d 182 (3d Cir. 1994) was overruled and defendant's prior attempt offense was held not to be a "controlled substance offense." *U.S. v. Nasir*, __ F.4th __ (3d Cir. Nov. 8, 2021) (en banc) No. 18-2888.

The Sixth Circuit says attempt is no longer a "controlled substance offense" for career offender purposes. (520) Defendant pleaded guilty to drug trafficking and was found to be a career offender based on his prior convic-tions under Ohio Rev. Code § 2925.03(A)(1) for offering to sell drugs. On appeal, the Sixth Circuit reversed, holding that after *U.S. v. Havis*, 927 F.3d 382 (6th Cir. 2019), an attempted offense no longer qualifies for a career offender enhancement. *U.S. v. Alston*, __ F.3d __ (6th Cir. Sept. 28, 2020) No. 19-3884.

Braxton is now, in effect, to be re-sentenced today, after the passage of the First Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act and grants of compassionate releases based on the need to avoid unwarranted sentencing disparities, which expressly allowed for the possibility for a sentence reduction based

on an individualized assessment of the § 3553(a) factors and other criteria.

Braxton essentially argues that the unwarranted sentencing disparity factor must be determined only with reference to those comparably situated defendants who– those being sentenced today under a different sentencing structure and/or received a reduction in sentence based on the need to avoid unwarranted sentencing disparities. Braxton's sentence in 2013 is now disparate relative to Defendant's who were sentenced after December 21, 2018 and post-*Havis* decision.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) (recognizing that "a district court may consider disparities among co-defendants in determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."); *United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2, 2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in

light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow unwarranted sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09)); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted disparities between codefendants who are similarly situated, and...the district court may compare defendants when deciding a sentence."); *United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' when the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

In sum, applying *Apprendi* and *Alleyne* logic to this case; absent the career offender enhancement in light of *Havis*; and 782 application, Braxton's Total Offense Level would now be 33, in Criminal History Category of IV, which yields a Total Offense Level of 31, and a Criminal History Category of IV, establishing an advisory Guidelines range of 151 to 188 months, which is a lesser harsh sentence. At sentencing, the Court sentenced Braxton to 324-month sentence (50+% lower than the low end range of the guidelines). Applying the same consideration, Braxton should be sentenced to a term of 188 months' imprisonment.

The government may argue that a full resentencing is foreclosed by *Dillon v. United States*, 560 U.S. 817, 824-26, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010), where the Supreme Court found that full sentencing rehearings are not authorized by retroactive guideline reductions. However, the Fourth Circuit does not reach this argument because it finds that there is no need to do so. The court shall consider the § 3553(a) factors. See *United States v. Davis*, 679 F.3d 190 (4th Cir. 2012) (holding that in the context of a Rule 35(b) motion, a district court can consider § 3553(a) factors). See also: https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf (last viewed April 29, 2019) (noting in newsletter from the United States Sentencing Commission that courts will have to decide whether a resentencing under the Act is a plenary resentencing proceeding or a more

36

limited resentencing and stating "In either instance, the Act made no changes to 18 U.S.C. § 3553(a), so the courts should consider the guidelines and policy statements, along with other 3553(a) factors, during the resentencing.")

District courts enjoy substantial discretion to consider all relevant information at a sentencing hearing. That discretion extends to subsequent hearings modifying sentencing, as well. The First Step Act preserves this discretion, allowing the district court to reduce sentences based not only on the changes to sentencing ranges, but also on other legal or factual changes that have occurred since the original sentencing.

Under 18 U.S.C. § 3582(c)(2), to modify Braxton's sentence, taking into account the advisory nature of the guidelines after *Booker* and the considerations set forth in 18 U.S.C. § 3553(a). The court should find that a sentence of 188 months is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law.

Finally, Braxton asserts that the increase in the calculation of his sentencing range based on career offender enhancement, resulted in a longer sentence. If so, this could be deemed a miscarriage of justice.

37

## VI. <u>CONCLUSION</u>

For the above and foregoing reasons, Braxton prays this Court would consider his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018, based upon the "extraordinary and compelling reasons" in light of *Apprendi* and *Alleyne*; absent the erroneous career offender enhancement in light of *Havis*; applicable 782 Amendment; and unwarranted disparity among comparably situated Defendants who were sentenced today under a different sentencing structure, and release him to home confinement or hold a hearing as soon as possible.

Respectfully submitted,

*Samuel Braxton*

Dated: December 29, 2022

_____

SAMUEL BRAXTON
REG. NO. 14783-016
FCI FORT DIX
FEDERAL CORR. INSTITUTION
P.O. BOX 2000
JOINT BASE MDL, NJ 08640
Appearing *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on December ___, 2022, I mailed a true and correct copy of the above and foregoing Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 was sent via U.S. Mail, postage prepaid, to Gary Michael Morgan, Jr., U.S. Attorney's Office, 6406 Ivy Lane Ste. 800, Greenbelt, MD 20770.

SAMUEL BRAXTON

39